DECISION.
{¶ 1} While we can find no Ohio cases addressing the issue, we hold that where an anticipatory warrant is issued upon probable cause that a vehicle will return to the jurisdiction loaded with drugs, the warrant is valid. Defendantappellant Lester Ward Sr. appeals his convictions for possession of and trafficking in cocaine. Because the trial court correctly overruled Ward's suppression motion, we affirm.
 I. A Van, Coffee, Drugs, and a 20-Year Sentence {¶ 2} In November 2003, a hidden compartment was found in Ward's van. There were coffee grounds — often used to mask the odor of narcotics — in the compartment. The police discovered that the van had been driven approximately 120,000 miles in a year and a half. Based on this information, the police obtained a warrant to place a global positioning device on the van.
 {¶ 3} A few days later, the van left Cincinnati and went straight to Miami, Florida. After spending only about eight and a half hours there, the van started back toward Cincinnati.
 {¶ 4} The police then filed an affidavit seeking a search warrant for the van. The affidavit included information about the hidden compartment, the presence of coffee, and the great distance traveled in a short time. It also stated that various sources had told the police that Ward and his son were probably transporting cocaine from Miami, and that there would be narcotics or evidence of narcotics in the van. Based on this information, the police obtained a search warrant to allow the police to search the van once it reentered the jurisdiction.
 {¶ 5} Shortly after its return, police searched the van and found over 1000 grams of cocaine in the hidden compartment. Ward was arrested and charged with possession of cocaine, trafficking in cocaine, and possessing criminal tools. The first two counts also included major-drug-offender specifications.
 {¶ 6} Ward moved to suppress the evidence obtained during the search of his van. He argued that the evidence was the fruit of an unlawful anticipatory warrant. When the trial court denied Ward's motion, he pleaded no contest. The trial court then sentenced Ward to 20 years' imprisonment: two mandatory 10-year sentences to run consecutively.
 {¶ 7} On appeal, Ward assigns two errors: (1) the trial court should not have held admissible the evidence obtained from the van; and (2) the trial court erred in sentencing Ward to 20 years' imprisonment.
 II. Anticipatory Warrants {¶ 8} In his first assignment, Ward argues that the cocaine seized from the secret compartment of his van should have been suppressed because the anticipatory warrant was improper, there was no independent probable cause to search the vehicle, and the good-faith exception to the warrant requirement did not apply. We first address Ward's argument concerning the anticipatory nature of the warrant.
 {¶ 9} To establish probable cause to issue a search warrant, an affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched.[1] And probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime.[2]
 {¶ 10} When scrutinizing a search warrant for probable cause, reviewing courts should not substitute their judgment for that of the magistrate by reviewing all aspects of the magistrate's decision de novo.[3]
 {¶ 11} Generally an affidavit in support of a search warrant relates to probable cause that already exists — that is, the evidence sought is already at a specified location.[4]
 {¶ 12} But in rare circumstances that is not necessarily the case. When the police can demonstrate probable cause "that at some future time, but not presently, certain evidence of crime will be located at a specific place to be searched," the magistrate may issue an anticipatory warrant.[5] Given proper facts, a magistrate can reasonably conclude that probable cause to search the premises exists and issue a warrant.[6]
Courts have often stated that "[w]hen the evidence to be seized is on a sure and irreversible course" to a particular place, an anticipatory warrant may issue.[7]
 {¶ 13} The best illustration of this is probably when the post office or a delivery company intends to deliver a package within a few hours.[8]
Under that scenario, it is almost certain that the package will be delivered at a controllable time and that the police can search the delivery address after the package has arrived. The delivery can be a "triggering event" for execution of the warrant.
 {¶ 14} Obviously, this case is not analogous to that type of delivery. But that does not mean that the warrant was invalid. The police had enough information to show probable cause that the van contained drugs at the time they sought the warrant. And this was not a typical anticipatory warrant — neither the warrant nor the affidavit listed a specific triggering event. But the van and the cocaine were not within the jurisdiction at the time. The warrant therefore could not have been executed when it was issued. The triggering event was simply the van's return to the jurisdiction.
 {¶ 15} Ward argues that the driver could simply have turned around or dropped off the cocaine along the way. But there was probable cause that the van would return to Cincinnati at some future time and contain evidence relevant to the warrant. There were no constitutional problems like there would be for a package delivery — if the package was not delivered and the police searched the house, it would be an intrusion — that is why the delivery has to be on its way and substantially certain to occur. Here, if the van turned around, the warrant would not be served, so there would be no intrusion.
 {¶ 16} We hold that if there is probable cause to believe that a vehicle contains contraband, an anticipatory warrant may issue for the search of the vehicle when — and if — it reaches the jurisdiction. Obviously, the normal requirement that a warrant be executed in a timely manner still applies. Had Ward's van taken two weeks to get back to Cincinnati, probable cause would have lapsed. But the van came straight back to the jurisdiction, and the warrant was executed in a timely manner.
 {¶ 17} This was not like the situation in State v. Nathan.[9]
There, a magistrate issued a warrant that stated on its face that it could be executed only if a criminal informant entered the house in question and made a controlled drug buy or if a criminal informant entered the house and saw drugs there. This was obviously an invalid anticipatory warrant because there was too much discretion given to the police — it was almost a general warrant.
 III. Other Jurisdictions {¶ 18} The facts in this case are relatively unique — we cannot find any other Ohio cases that have dealt with an anticipatory search warrant based on probable cause concerning a vehicle not in the jurisdiction. But looking outside this jurisdiction, we find some analogous cases.
 {¶ 19} In Massachusetts v. Staines,[10] police set up controlled drug buys from Staines. During one of these buys, a criminal informant asked for more drugs than he had initially requested. Staines let the criminal informant and the undercover officer out of his car, drove up the street, and then immediately came back with more drugs. The police surmised that Staines had a supply of drugs in his car, but did not want his customers to see its exact location. A magistrate issued an anticipatory search warrant that was to become effective once the undercover officer had arranged a sale and Staines had picked him up. The Massachusetts Supreme Judicial Court held that this warrant was lawful because the essential question was whether there was probable cause that drugs would be in the car.[11] While we do not necessarily agree with the Staines outcome — it seems to grant the police too much discretion — some of its reasoning is applicable here.
 {¶ 20} The Staines court also noted that the "sure and irreversible course" language only applies when the certainty of the arrival of the contraband is at issue, not the timing. And that is where Staines and the present case coincide: the issue was not whether drugs would be present, but when the drugs would be present. In Staines, it was when Staines showed up for the buy. Here, it was when Ward entered the jurisdiction.
 {¶ 21} The Staines court also noted that the sure-and-irreversible-course requirement did not apply because the drugs in question were being controlled by Staines, not by the government. The court cited two other jurisdictions that had expressed similar doubts that the sure-course requirement applied whenever the delivery of the contraband was not controlled by the government.[12] At least in this case — where there were multiple facts indicating the presence of drugs heading toward Cincinnati in Ward's van — we agree. We hold that the sure-course requirement did not apply here.
 {¶ 22} In Nevada v. Parent,[13] the Nevada Supreme Court faced a similar question. There, Parent was a resident of New Orleans, Louisiana. An anonymous informant told the Washoe County (Nevada) police that Parent would arrive at the Reno airport with luggage that contained a baby-powder bottle filled with cocaine. The informant described Parent, as well as the fact that he would be arriving on a certain date, accompanied by two women. The police obtained an anticipatory warrant that could not be executed until Parent had landed at the Reno airport and picked up his luggage. Parent arrived, picked up his luggage, and was stopped while police searched his luggage and found the baby-powder bottle filled with cocaine.
 {¶ 23} Parent then moved to suppress the evidence, claiming that it had been obtained through the use of an illegal anticipatory warrant because, among other things, the warrant should not have been issued until he entered Nevada. But the Nevada Supreme Court held that even though Parent was not yet in the state of Nevada at the time the warrant was issued, the anticipatory warrant was valid. The court noted that the magistrate had protected against the premature execution of the warrant by requiring that the police not search Parent or his luggage until he had arrived in Reno from New Orleans.
 {¶ 24} Though such an explicit restriction was not included in Ward's warrant, the police could not have executed the warrant until Ward was in their jurisdiction. We agree with Parent's logic on this issue and hold that Ward did not have to be present in the jurisdiction before the warrant issued. (But we do question the Nevada outcome, especially because the tip was anonymous and not verified in any particular.)
 {¶ 25} In Pennsylvania v. Nahavandian,[14] a magistrate issued a warrant that permitted the police to search a vehicle if it drove from one specific town to another. When the vehicle deviated from the path back to the second town, the police stopped the car and searched it. The court held that because the circumstances in the warrant had not been met, the search was warrantless (but because probable cause existed anyway, the court affirmed the conviction).
 {¶ 26} Nahavandian illustrates what could have happened in this case had the van not returned to the jurisdiction. And implicit in the court's holding is that if Nahavandian had driven to the second town, the warrant would have been valid.
 {¶ 27} As the Staines court accurately pointed out in a footnote, "It may be that an anticipatory warrant provides greater protection against unreasonable invasion of an individual's privacy than the typical search warrant, because an anticipatory warrant requires a triggering event, the condition on which the warrant takes effect."[15]
 {¶ 28} There was no problem with the warrant that the police obtained in this case — it is a far better practice to obtain a warrant such as this than just to assume probable cause exists and to make warrantless searches. The police are in a much better legal position to have a search upheld if it is conducted under a warrant.
 {¶ 29} The trial court correctly denied Ward's motion to suppress. We therefore overrule Ward's first assignment of error.
 III. All the Facts Point to Probable Cause {¶ 30} Even if the police had not properly obtained a warrant, their search and seizure would not have been unconstitutional. Once a law-enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based on the well-established automobile exception to the warrant requirement.[16] And automobiles may be stopped without a warrant as long as there is a reasonably articulable belief that an offense has been committed or that the vehicle contains contraband.[17]
 {¶ 31} A warrantless search must be supported by probable cause that is based on objective facts that could justify the issuance of a warrant by a magistrate.[18] And this determination involves an examination of the totality of the circumstances by using common sense in deciding whether there is a fair probability that contraband or evidence of a crime will be found.[19] From a constitutional perspective, there is no difference between seizing and holding a vehicle while waiting for a search warrant and immediately searching the vehicle, so long as probable cause exists.[20]
 {¶ 32} In this case, for all the same reasons that the officer listed in his affidavit to obtain the warrant, the police had probable cause to believe that the van contained drugs or evidence relating to drugs — the hidden compartment, the coffee grounds, and the great number of miles traveled in a short time all pointed in that direction. And because of the global positioning device, the officers knew that the van had just driven all the way to Miami, stopped for only eight and a half hours, and then come back.
 {¶ 33} Ward spends much of his brief explaining why each of these facts did not establish probable cause. And we agree, at least as far as each individual fact goes. If the police knew only that Ward's van contained a secret compartment, there would have been no probable cause. If they knew only that the van had been driven 120,000 miles in a year and a half, there would have been no probable cause. Or if they knew only that the van traveled to Miami, spent a short time there, and turned right back around, there would have been no probable cause.
 {¶ 34} But under the totality of the circumstances — the compartment plus the coffee plus the informants plus the mileage plus the timing — everything began to add up. The police had probable cause to believe that Ward's van was being used to transport drugs. They therefore had the right to stop and search the van without a warrant. But as we have said earlier, it is always better to have a warrant when it may not be necessary than not to have one when it is necessary.
 {¶ 35} Because the police had probable cause to search the vehicle, and because the warrant was in any event valid, we need not address Ward's argument that the good-faith exception to the warrant requirement did not apply.
 IV. Sentencing {¶ 36} In his second assignment, Ward argues that the trial court sentenced him in violation of his constitutional rights. Ward bases his argument almost entirely on the United States Supreme Court's rulings inRing v. Arizona,[21] Blakely v. Washington,[22] and United States v.Booker.[23]
 {¶ 37} But those cases apply only to the length of sentences when judicial factfinding is necessary to increase the sentence. Ward was charged with possessing and trafficking in over 1000 grams of cocaine. The 10-year sentences were therefore mandatory.[24] Ring, Blakely, andBooker had no bearing on Ward's maximum sentences.
 {¶ 38} Ward seems to argue that because the trial court stated that his actions were part of an act for hire or organized crime, his sentence was invalid. But the trial court did not sentence Ward to additional imprisonment for the major-drug-offender specifications, which would have required such a finding. In fact, the trial court specifically noted that it was only a circumstantial inference that Ward was involved in organized crime, and therefore it did not impose additional imprisonment for the specifications.
 {¶ 39} We have already held that Blakely and Booker do not apply to consecutive sentences.[25] So the only question that remains is whether Ward's consecutive sentences were contrary to law.
 {¶ 40} To impose consecutive sentences, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."[26] The trial court must also make one of the following findings: (1) when the offender committed the offenses, he was awaiting trial or under community control; (2) the harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[27]
The trial court must also make these findings on the record.[28]
 {¶ 41} Here, the trial court stated that consecutive sentences were warranted to fulfill the sentencing purposes — namely, to protect the public and to punish the offender. The court noted that one 10-year sentence would be insufficient based on the nature of the offenses because of the amount of the cocaine involved. It stated that imposing only the minimum sentence would both demean the seriousness of the offenses and not adequately protect the public.
 {¶ 42} The trial court continued, "I also indicated that consecutive terms are necessary, based on what has been said, and that is the harm caused was great and/or [sic] unusual; and that consecutive sentences are necessary to fulfill the import of Senate Bill 2, being 2929.11."
 {¶ 43} The only thing that the trial court did not specifically say was that the consecutive sentences were not disproportionate to the seriousness of Ward's conduct and the danger that he posed to the public. But the trial court did stress that the amount of cocaine involved in this case was unusually large and that one 10-year sentence would not be sufficient. And the court was not required to pronounce talismanic words to comply with the guidelines and factors for sentencing.[29]
 {¶ 44} We therefore overrule Ward's second assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J., concur.
[1] See United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741.
[2] See Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317.
[3] See id.; State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640.
[4] See, generally, Berger v. New York (1967), 388 U.S. 41, 87 S.Ct. 1873;Fourth Amendment to the United States Constitution; Section 14, ArticleI, Ohio Constitution.
[5] State v. Folk (1991), 74 Ohio App.3d 468, 472, 599 N.E.2d 334.
[6] See id.; United States v. Lowe (C.A.6, 1978), 575 F.2d 1193.
[7] See id.; State v. Nathan, 2d Dist. No. 18911, 2001-Ohio-1826;United States v. Ricciardelli (C.A.1, 1993), 998 F.2d 8.
[8] See United States v. Lowe (C.A.6, 1978), 575 F.2d 1193.
[9] 2d Dist. No. 18911, 2001-Ohio-1826.
[10] (2004), 441 Mass. 521, 806 N.E.2d 910.
[11] Id.
[12] See United States v. Brack (C.A.7, 1999), 188 F.3d 748; UnitedStates v. Rowland (C.A.10, 1998), 145 F.3d 1194.
[13] (1994), 110 Nev. 114, 867 P.2d 1143.
[14] (2004), 2004 Pa.Super. 136, 849 A.2d 1221.
[15] Massachusetts v. Staines (2004), 441 Mass. 521, 806 N.E.2d 910, citing United States v. Gendron (C.A.1, 1994), 18 F.3d 955.
[16] See Maryland v. Dyson (1999), 527 U.S. 465, 119 S.Ct. 2013; Statev. Moore, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804.
[17] See Chambers v. Maroney (1970), 399 U.S. 42, 90 S.Ct. 1975.
[18] See State v. Welch (1985), 18 Ohio St.3d 88, 480 N.E.2d 384.
[19] See Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317; Statev. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640.
[20] See Chambers v. Maroney (1970), 399 U.S. 42, 52, 90 S.Ct. 1975.
[21] (2002), 536 U.S. 584, 122 S.Ct. 2428.
[22] (2004), ___ U.S. ___, 124 S.Ct. 2531.
[23] (2005), ___ U.S. ___, 125 S.Ct. 738.
[24] See R.C. 2925.11(C)(4)(f); R.C. 2929.03(C)(4)(g); R.C.2929.14(A)(1).
[25] See State v. Montgomery, 159 Ohio App.3d 752, 2005-Ohio-1018,825 N.E.2d 250.
[26] R.C. 2929.14(E)(4).
[27] Id.
[28] See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473.
[29] See State v. Mateo, 150 Ohio App.3d 489, 2002-Ohio-6852,782 N.E.2d 131, citing State v. Edmondson, 86 Ohio St.3d 324,1999-Ohio-110, 715 N.E.2d 131.